# NO. 12-15-00157-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STANFORD DEWAYNE JONES SR.,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Stanford Dewayne Jones Sr., appeals his convictions on three counts of arson. He presents three issues on appeal contending that (1) the evidence is insufficient to support his convictions, (2) the trial court erred in the admission of evidence for impeachment, and (3) the trial court erred in admitting copies of Appellant's Facebook postings without proper authentication. We affirm.

## BACKGROUND

In early November 2012, Appellant and his then girlfriend, Evelyn Hamilton, went to Lanzy Owens's Club, a Lufkin nightclub. Evelyn left after Appellant had several drinks and started "acting crazy." She soon received a call from the club to come pick up Appellant. She found Appellant somewhere in the club in a confused state, complaining of a broken finger and wearing only boxer shorts. Concerned that someone at the club had spiked his drink, Evelyn and Appellant's mother and brother took him to the hospital where he remained for three or four days.

On November 11, 2012, while Appellant was still in the hospital, he posted three statements to his Facebook page. The first said, "No tell your brother im ready to put a match to lufkin tx and watch this muthafucka burn down su wuu biz." The second posting, also from

November 11, 2012, stated, "Enjoy a peaceful night get plenty of sleep because after tonight some of you will see heaven the rest of you go burn ya go burn slow." The last posting stated, "Im alive and all you muthafucka who want me dead you go die before me one by one lord forgive me for my sins."

Over a forty-eight hour period beginning on November 13, 2012, one day after Appellant left the hospital, six fires of suspected incendiary origin occurred in a relatively small area in Lufkin near where Appellant lived. One of the fires occurred at the nightclub where Appellant believed someone had spiked his drink. The fires ceased after Appellant's arrest. In a six count indictment, the State charged Appellant with intentionally setting all six fires. The State abandoned Count IV. The jury found Appellant guilty on three of the remaining counts and not guilty on the other two counts of arson. The trial court assessed his punishment at imprisonment for twenty years.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant maintains the evidence is insufficient to support his conviction.

### Standard of Review and Applicable Law

In reviewing the legal sufficiency of the evidence, the reviewing court considers the evidence in the light most favorable to the verdict to determine whether the fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2012). Appellate review of all the evidence includes evidence that was properly admitted as well as evidence that was improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Id*.

A person commits an offense if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage

2

(1)     any vegetation, fence, or structure on open-space land; or
(2)     any building, habitation, or vehicle:
     (A)  knowing that it is within the limits of an incorporated city or town;
     (B)  knowing that it is insured against damage or destruction;
     (C)  knowing that it is subject to a mortgage or other security interest;
     (D)  knowing that it is located on property belonging to another;
     (E)   knowing that it has located within it property belonging to another; or
     (F)  when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

TEX. PENAL CODE ANN. § 28.02 (West 2011).

## Discussion

Officer Sean Alexander of the Lufkin Police Department responded at 4:45 a.m. on November 13, 2012, to a report of a suspicious fire at 906 O'Quinn. Lufkin Fire Marshal Steve McCool testified that he believed the fire was intentionally set, because the fire had multiple points of origin outside of the structure, and there was no other reasonable source of ignition. It appeared that the material used to start the fires had been collected nearby and intentionally and purposely placed against the house. Two vehicles were located within a few feet of the house. The fuel caps of the two vehicles had been removed and thrown on the ground. The fuel cap of one had been replaced by a rag. Both cars had gasoline running down their sides.

Bicycle tire tracks at the scene indicated the perpetrator was riding a bicycle. James "Baski" Davis saw someone wearing a hood and riding a blue bicycle go behind a house on Keltys Street. That house caught on fire shortly thereafter, within a half hour of the O'Quinn Street blaze.

Officer Christopher Nash responded to the fire at 1401 Keltys Street at 5:20 a.m., November 13, 2012. The house was vacant and boarded up. The fire was at the back of the house. A book-size lighter fluid can lay less than a foot underneath the building and in the place from where the flames were coming. Captain Ozzie Jarman of the Lufkin Fire Department concluded the fire was intentionally set. The gas and electricity service had been discontinued, and there was no probable ignition source except the can of lighter fluid at the point of origin.

On November 15, 2012, a fire occurred at Lanzy's Club (or Owens's Club) at 813 Keltys. Flammable material had been wedged in the doors and ignited. Fire Marshal McCool testified that there were at least three separate ignition sources, and that the fire was obviously incendiary in origin.

3

At about the same time as the Lanzy's Club fire, another fire broke out in a vacant house six or seven blocks away at 714 Cottonbelt. The fire appeared to have just been set when it was discovered, and it was quickly extinguished by the Lufkin Fire Department. A railroad track led between Lanzy's Club and the fire at 714 Cottonbelt. Because this was the most logical route to follow for one trying to avoid detection, Lufkin police officers walked the track between the two locations. Despite near freezing temperatures, Sergeant Stephen Abbott found a fresh "blob of phlegm" laying on the track. DNA testing identified Appellant as its source indicating that Appellant was on a path between the two fires close to the time they were set.

Lanzy's Club was where Appellant thought his drink had been spiked. He attributed his three day hospitalization to the spiked drink. Appellant apparently had a motive to seek retribution against the club's owners.

While still in the hospital, Appellant posted the threat "to put a match to lufkin" on his Facebook page. Later the same day, a post on his Facebook page stated, "Enjoy a peaceful night, get plenty of sleep because after tonight some of you will see heaven the rest of you go burn ya go burn slow." In his third posting on that date, he promised "all you . . . who want me dead you go die before me one by one. . . ." Barely twenty-four hours after Appellant's release from the hospital, the fires occurred at 906 O'Quinn and 1401 Keltys. Within forty-eight hours of these fires, the Lufkin police and fire departments responded to four more fires of suspicious origin including the fire at Lanzy's Club at 813 Keltys. After Appellant's arrest, the fires abruptly ceased.

DNA evidence from the rag used to replace the Jeep's gas cap at 906 O'Quinn placed Appellant at the scene at or near the time of the fire. Tire tracks indicated the person who set the fires was riding a bicycle. Within minutes of the ignition of the O'Quinn Street fire, "Baski" Davis saw a man riding a blue bicycle go behind the house at 1401 Keltys immediately before the fire there at approximately 4 a.m. Investigators noted a blue bicycle at Appellant's house and apparently the same bicycle at his mother's residence.

We conclude that the cumulative force of all the incriminating circumstances, including Appellant's expressed intent "to put a match to Lufkin," is sufficient to support Appellant's conviction of the three counts of arson. Appellant's first issue is overruled.

**IMPEACHMENT WITH PRIOR INCONSISTENT STATEMENTS**

In his second issue, Appellant complains that the trial court erred in admitting the prior inconsistent statements of Baski Davis and Michele Dupree because no predicate for their introduction had been laid.

## Standard of Review and Applicable Law

The trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. ***Martinez v. State***, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Texas Rule of Evidence 613(a) provides that

> [i]n examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted. This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2).

TEX. R. EVID. 613(a).[1] The predicate required by Rule 613(a) must be laid before impeaching a witness with a prior inconsistent statement. ***Osteen v. State***, 61 S.W.3d 90, 91 (Tex. App–Waco 2001, no pet.).

## Discussion

Baski Davis testified that he was a high school classmate of Appellant. He told the court that he got up about 4 a.m. on November 12, 2012, and saw someone wearing a hood and riding a bicycle coming off Keltys behind the house (1401 Keltys). The State asked Mr. Davis, "Do you recall meeting with Mr. McCool that day?" Davis responded, "I can't remember." The State asked, "Do you recall telling Mr. McCool that you saw a man riding a bicycle back behind that house that morning?" Davis answered, "I can't recall. But I don't know who it was." Then the State asked, "Do you recall telling him that you knew it was Stanford Jones because Stanford was a former classmate of yours?" Davis responded, "I did tell him he was a classmate, I went to school with him." Davis said his conversation with McCool was not over the phone, but "in the neighborhood."

---

[1] Rule 613 was amended, effective April 1, 2015, as part of the general restyling of the Texas Rules of Evidence "to make [them] more easily understood and to make style and terminology consistent throughout." *See* 78 TEX. B.J. 374, 377 (Tex. & Tex. Crim. App. 2015). Appellant's trial on the merits was held prior to the amendment's effective date.

Fire Marshal McCool was called by the State and testified that Davis told him Appellant was the person riding the bicycle that went behind the house at 1401 Keltys before it burned. The record shows that Baski Davis knew the time and place of the statements and to whom they were made. He was informed of the content of the inconsistent statement attributed to him. Davis did not remember making the statements. At no point did Davis ever "unequivocally admit" making them. He denied knowing that it was Appellant who was riding the bicycle. The State laid a proper predicate for the introduction of Davis's prior inconsistent statement. *See* TEX. R. EVID. 603(a).

Michelle Dupree testified that she remembered talking to Fire Marshal McCool the morning of the fire at 1401 Keltys. In her testimony, she stated that she dropped off Appellant at his house around 7:15 or 7:30 that morning. She said it had to be after 7:00, "because I don't get up until after 7:00." The prosecutor then asked her, "Do you recall telling him [McCool] it might have been as early as 6:15?" Dupree said "no." The prosecutor then asked, "Do you remember telling him that the reason you remember that is because you had your cell phone alarm set for 6:00 or 6:15 and it didn't go off until you got home?" Dupree replied, "Huh-uh."

Later during the trial, the State asked McCool about his telephone interview of Dupree that morning after the fire.

| State: | Did you ask her – did you ask her what time she dropped him off? |
|---|---|
| McCool: | Yes. |
| State: | Did you ask her what time she returned home? |
| McCool: | Yes, sir. |
| State: | [W]hat time did she say she got home? |
| McCool: | Between 6:00 and 6:15. |
| State: | Did she say why she could remember that? |
| McCool: | She said she had her alarm set for 6:00 or 6:15, and it went off right after she went home. |

The record shows Dupree knew that she was talking to McCool and that she knew the conversation occurred the morning after the fires at 906 O'Quinn and 1401 Keltys. She did not "unequivocally admit" making the statements. Instead, at trial she stated a different time and a

6

different reason for knowing the time that she dropped off Appellant. The State laid a proper predicate for the introduction of Dupree's prior inconsistent statement. *See* TEX. R. EVID. 603(a).

Appellant's second issue is overruled.

### ADMISSION OF FACEBOOK POSTINGS

In his third issue, Appellant maintains the trial court erred in admitting into evidence printouts from Appellant's Facebook page that had not been properly authenticated.

**Standard of Review and Applicable Law**

The trial court's determination of authenticity is reviewable only for abuse of discretion. ***Tienda v. State***, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The trial court does not abuse its discretion in admitting evidence under Rule 901 if its conclusion that a reasonable juror could find the proffered evidence authentic is at least "within the zone of reasonable disagreement." ***Id***.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R. EVID. 901(a).[2] Given the diversity of electronic evidence, there is no single approach that will work in all instances. ***Tienda***, 358 S.W.3d at 639. "Rather, as with the authentication of any kind of proffered evidence, the best or most appropriate method for authenticating electronic evidence will often depend upon the nature of the evidence and the circumstances of the particular case." ***Id***.

**Discussion**

Fire Marshal McCool printed the Facebook posts in question directly from the internet. The Facebook page was in Appellant's name, not a nickname or an alias. Both Appellant's mother and girlfriend testified that Appellant sometimes referred to himself as "jboyheartofthanorth." McCool testified that jboyheartofthanorth was part of one of the email addresses linked to the Facebook page that was in Appellant's name. Appellant's date of birth, high school, and previous employer were accurately listed on the Facebook page according to his mother.

A picture of Appellant in a hospital gown was posted to his Facebook page during the time the hospital records show Appellant was in the hospital. The picture was posted on the

---

[2] Rule 901 was amended effective April 1, 2015. *See* n.2.

7

same date as the incendiary messages threatening to put a match to Lufkin.  Appellant's mother and sister observed Appellant on the phone during his hospital stay.  Both acknowledged that Appellant was able to upload information to Facebook from his phone.

These circumstances are sufficient to support a finding by a rational jury that Appellant created the Facebook postings offered into evidence.  The trial court did not abuse its discretion in admitting them in evidence.  Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's three issues, the judgment of the trial court is affirmed.

BILL BASS
Justice

Opinion delivered April 13, 2016.
*Panel consisted of Hoyle, J., Neeley, J., Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 13, 2016**

**NO. 12-15-00157-CR**

**STANFORD DEWAYNE JONES SR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2013-0744)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Hoyle, J., Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

# THE STATE OF TEXAS
# M A N D A T E

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TO THE 217TH DISTRICT COURT OF ANGELINA COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 28th day of March, 2016, the cause upon appeal to revise or reverse your judgment between

**STANFORD DEWAYNE JONES SR., Appellant**

**NO. 12-15-00157-CR; Trial Court No. 2013-0744**

Opinion by Bill Bass, Justice.

**THE STATE OF TEXAS, Appellee**

was determined; and therein our said Court made its order in these words:

"Text goes here."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of March, 2016.

PAM ESTES, CLERK

By: _Katrina McClenny_
Chief Deputy Clerk